UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GHA CAPSTONE, LLC; GH AMERICA INVESTMENT GROUP, INC.; BRAZOS HIGHLAND HOLDING, LLC; and GH AMERICA ENERGY, LLC, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CASE NO. _____ |
| MINGYU TANG, | § § § | |
| Defendant. | § | |

### PLAINTIFFS' VERIFIED ORIGINAL COMPLAINT AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

NOW COME Plaintiffs, GHA CAPSTONE, LLC ("GHA Capstone"); GH AMERICA INVESTMENT GROUP, INC. ("GHA Investment"); BRAZOS HIGHLAND HOLDING, LLC; and GH AMERICA ENERGY, LLC ("GHAE")(collectively, "GHA"), who hereby file this original complaint and application for temporary restraining order and order to show cause why a preliminary injunction should not issue against Defendant, MINGYU TANG ("Tang"), and would for cause of action respectfully show unto the Court the following:

### PARTIES AND SERVICE OF PROCESS

1. Plaintiff GHA Capstone, L.L.C. is a Delaware corporation.

2. Plaintiff GH America Investment Group, Inc. is a Delaware corporation licensed to do business in Texas.

3. Plaintiff Brazos Highland Holding, L.L.C. is a Delaware corporation doing business in Texas.

4. Plaintiff GH America Energy, L.L.C. is a Texas corporation.

5. Defendant Tang is an individual of the full age of majority residing in Harris County, Texas, and may be served at his last known address, 5139 Beechnut Street, Houston, Texas 77096, or wherever he may be found.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over this action under 28 U.S.C. § 1331 due to the federal question that arises under 18 U.S.C. §1836, the Defend Trade Secrets Act of 2016 ("DTSA"), because this is a civil action and GHA's First Claim for Relief arises under the DTSA.

7. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) because all of GHA's other claims for relief are so related to the DTSA claim that they form part of the same case or controversy under Article III of the United States Constitution.

8. This Court also has personal jurisdiction over Defendant Tang because he is a resident of Harris County. This Court also has jurisdiction over Tang as, on information and belief, he has committed tortious acts in Texas.

9. Venue is proper in Harris County, Texas pursuant to Texas Civil Practice and Remedies Code §§15.006 and 15.035(a) because the Confidentiality Agreement executed by Tang provides for venue in Harris County, Texas. Venue is also proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to GHA's claims occurred in Harris County, Texas.

## FACTUAL BACKGROUND

10. On or about December 16, 2019, Tang commenced his employment with GHA.

11. In connection with his employment, Tang was issued an onboarding checklist consisting, in relevant part, of a complete Employee Handbook. *See* Ex. 1.

12. The Employee Handbook defines GHA proprietary information as, "confidential information about the company's customers, potential customers, vendors, projects, contemplated projects, financial affairs, profit margins, pricing strategies, marketing strategies, sales strategies, research and development, know-how and negative know-how. This proprietary information belongs to your worksite employer and may only be accessed, used or disclosed for authorized company business." *Id.* at GHA00040.

13. With regard to GHA's confidential information, the Employee Handbook provides that "[t]he Company's business affairs, projects, or clients should not be discussed with anyone outside the Company, or in some cases with other employees not working on your project, except when required in the normal course of business. The Company has adopted a comprehensive Confidentiality Policy, the terms of which each employee is required to acknowledge and agree to in writing. The Company also reserves the right to require all prospective and current employees to sign a Non-Disclosure Agreement." *Id.* at GHA00006.

14. Under the Employee Handbook, Employees are required to "use [their] best efforts to protect the secrecy of the proprietary information. For example, proprietary information may not be discussed with outsiders without authorization. [Employees] also may not copy, save or transfer electronic copies of proprietary information away from the company's storage location (e.g., a server network), except for authorized business use. The storage location will be the sole repository for the proprietary information. For example, [the employee] may not e-mail proprietary information to [his] personal e-mail account… Former employees must continue to comply with this policy." *Id.* at GHA00040.

15. Moreover, employees are specifically instructed to "[n]ever include in an email message any information that is private and confidential outside the Company…" *Id.* at GHA00019.

16. The Employee Handbook further provides, among other things, that discussion of, or inappropriate release of information which breaches client, co-workers or company confidentiality, as well as, the use of company or client information for personal gain, financial or otherwise, constitutes inappropriate work conduct. *Id.* at GHA00034-35.

17. The Employee Handbook further provides that an "employee shall avoid any investment or other interest in another business that would conflict with the proper performance of his or her duties or responsibilities for the Company, or which might interfere with his or her independence of judgment with respect to transactions between the Company and such other business…Personal or outside interests or relationships must not influence employees to the detriment of the Company….If considering or unsure about whether a conflict exists, must report to supervisor/CEO/President for final determination." *Id.* at GHA00005.

18. Other activities prohibited under the Employee Handbook include: copying or deleting files belonging to the Company without proper authorization; acting (paid or unpaid) as an employee, officer, director, consultant or representative of any customer or supplier of the Company or of any competitor of the Company; having financial involvement with an employee or representative of a customer or supplier or competitor of the Company with whom the employee directly or indirectly deals in the course of his or her employment with the Company; or soliciting any subordinate employee to engage in or actually engaging in any outside employment or business activity with such an employee. *Id.* at GHA00006, GHA00020.

19. Tang signed the Employee Handbook Acknowledgment, representing his understanding of the terms of his employment. *See* Ex. 2.

20. In addition to the Employee Handbook, on or about December 18, 2019, Tang executed as a condition of his employment, a Confidential Information Protection Agreement, which further defined GHA Confidential Information and provided for injunctive relief to protect the same. *See* Ex. 3, hereinafter referred to as the "Confidentiality Agreement."

21. On July 6, 2023, Ergos, the Information Technology (IT) vendor used by GHA, was asked to check the Lenovo ThinkPad X13 company laptop assigned to Tang in connection with a report to the company by Tang on June 26, 2023, that on June 23, 2023, his laptop had allegedly been struck by lightning.

22. Ergos found no evidence of damage to the laptop. Rather, Ergos discovered that "BitLocker" was enabled on the computer.

23. BitLocker Encryption is a full disk encryption feature developed by Microsoft for its Windows operating system. It provides data protection by encrypting the entire hard drive, including the operating system, system files, and user data. BitLocker can be enabled either by a user, or through company group policies and configurations.

24. Ergos confirmed that enabling BitLocker is not part of the current procedure for GHA's workstation setups, and indeed, BitLocker was not installed on Tang's laptop at the time the same was set up by Ergos and provided to Tang, thus making the finding of this encryption software on Tang's company laptop all the more curious.

25. On or about July 13, 2023, GHA CapStone, LLC engaged Purpose Legal Solutions ("Purpose Legal"), a company that specializes in digital forensics and the collection, analysis, and processing of electronically stored information ("ESI"), to image the internal hard drive of the

Lenovo ThinkPad X13 company laptop assigned to Tang for the purpose of recovering encrypted company data on said device.

26. Although Purpose Legal was unable to recover data from the laptop itself due to the encryption software believed to have been installed by Tang, a cross-check of server, e-mail, OneDrive, and Azure active director data revealed, in part, the following disturbing facts:

    a. On or about July 14, 2023, Tang shared two "Top Tier Folders" entitled "GHAE" and "Case_CFIUS_Request" from his company email account to his personal Hotmail email account, the contents of which are further discussed hereinbelow, despite company policies prohibiting such transfers due to the highly confidential nature of these files;

    b. Tang deleted 275 company files from April 18 through July 7, 2023, including sales contracts, closing documents, appraisals, asset sales program documents, and renewable energy management documents, to categorize a few, despite company policies prohibiting such destruction of company property;

    c. On June 27, 2023, at 2:01:16 p.m., a USB device (Serial No. 5758373244323036485232) was connected to Tang's laptop, which USB is believed to be in Tang's possession; and

    d. Tang accessed the company server 286 times from his mobile device from August 1 through 8, 2023, after he had decided to take a sudden leave of absence.

27. Additional troubling facts are established through the Declaration of John Skibinski ("Skibinski"), Senior Project Developer with GH America Energy, LLC ("GHAE")'s Renewable Energies Department, which declaration has been attached as Exhibit 4:

    a. GHAE's Renewable Energies Department was led by Tang. The purpose of the department under his management was to market for sale specific non-residential

properties to companies that were interested in developing their own projects on the land. As part of his duties as Senior Project Developer of the Renewable Energies Department, Skibinski assisted potential buyers in understanding the technical aspects of potential energy project developments for which the land may be appropriate.

b. In November 2022, Skibinski attended a company meeting led by GHA's CEO, Lingyun Sun ("Sun"), concerning the poor performance of the Renewable Energies Department. Specifically, Sun expressed concerns that Tang had failed to adequately lead the department and meet the minimum expected goals. Skibinski personally had similar discussions with Tang and it was his impression that Tang was not motivated to sell the properties; often created obstacles to selling the properties; and exhibited poor communication with potential customers and upper management.

c. During the first quarter of 2023, Skibinski observed that, instead of working on the property sales projects for GHAE, Tang began focusing on side projects that were not sanctioned by GHAE, but for which he was using GHAE research and resources.

d. Skibinski recalls that around April 2023, Tang began soliciting him for specific technical assistance on his personal projects and proposals during GHAE work hours, including, but not limited to, energy storage project proposals and transmission line plans based on GHAE's prior research that he wanted to pitch to potential outside investors. Tang sometimes used emails from a non-GHA company in order to discuss these side projects.

e. In addition to soliciting Skibinski's technical expertise, around June 2023, Tang was attempting to solicit Skibinski and another GHA employee, Gustavo Solon, as potential employees for his new energy storage company.

f. On June 15, 2023, shortly after proposing to Skibinski a renewable energy business venture of his own, Tang shared an internal GHAE Shared Folder named "Case_CFIUS_Request" from his company email to his personal email account, tangmingyu@hotmail.com.

g. Skibinski reviewed the contents of this folder and was concerned to find that Tang had transmitted extensive GHAE confidential, proprietary, and trade secret documents outside GHA's Information Technology Domain (gha-group.com). Said documents contained organizational charts; contracts for oil and gas assets and ranch sales; research on renewable energy projects; ownership agreements; asset maps; consulting agreements; and other technical data that is critical to GHA operations and is highly confidential. This information was cultivated utilizing a great deal of GHA resources, financial and otherwise.

h. GHAE's unique ability to understand a potential buyer's capability to develop their own energy projects on the land being marketed for sale by GHAE involves a vast amount of industry know-how and resources relating to regulatory and technical research, which GHAE has developed through diligent work, costly engineering

    studies, CFIUS analysis, financial studies, and so forth. GHAE's unique library of institutional knowledge and technical expertise relating to land development services for renewables projects sets GHAE apart from its competitors. For these reasons, such information is proprietary and confidential.

i. GHAE develops financial information utilizing internal market research, customized buyer needs/preferences, historical financial data on current buyers, financial data on investors, *et cetera*, which information is highly confidential and may constitute trade secrets.

j. Documents utilized to analyze and develop energy-related project proposals, including analyzing CFIUS and other regulatory issues relating to the sale and possible uses of the land, speak to processes and procedures that give GHAE a competitive advantage that would be jeopardized if the information were disclosed.

k. GHAE takes efforts to protect its confidential, proprietary and trade secret information in the following non-exclusive respects:

    i. As a condition of employment with GHAE, all managers and all employees agree to abide by the terms of the company's Employee Handbooks, which contain confidentiality provisions providing that employees must not discuss or release the company's business affairs, projects, or clients with anyone outside the company; that private and confidential information is never to be emailed outside the company; and that employees must not act in conflict with company interests.

    ii. All managers and all employees must continue to treat all nonpublic Company information as confidential even after their employment with GHAE ends, and they are bound by policies and confidentiality agreements entered into during employment.

    iii. GHAE has adopted a comprehensive Confidentiality Policy, the terms of which each manager and employee is required to acknowledge and agree to in writing.

    iv. GHAE expects managers and employees to honor their employment and post-employment obligations with GHAE. Where they do not do so, GHAE is permitted to seek assistance from the Court to prevent injustice.

l. If said confidential, proprietary and trade secret information were to be disclosed to anyone outside of the company, it would significantly impact the ability of GHA to conduct business, as competitors would learn internal strategies and sales techniques for structuring property pricing and sales to maximize outcomes, thus negatively impacting the company's competitive advantage; would learn internal research and analysis on the regulatory difficulties associated with energy development projects and how they may be addressed; would gain immediate access to company "know-how" in the industry; and would unfairly propel competitors to a position of unfair advantage that the company has spent years and considerable time, energy, resources, and money

    to develop.

m. In addition, potential buyers and cooperative partners of the company will lose confidence, resulting in reputational damage that is irreparable.

n. The threat of harm faced from the use and/or disclosure of this information is irreparable because allowing the information that Tang has in his possession to be used for Tang's personal benefit or to get into the hands of a competitor would change the current state of affairs in the market in which the company operates and cause competitors to spend less time or no time developing their own land development services for energies projects.

o. Meanwhile, the company's ability to conduct its business adequately and securely is at risk due to loss of goodwill and reputation amongst its business relationships and the industry, thus constituting irreparable harm to GHAE.

# FIRST CLAIM FOR RELIEF
**(Misappropriation of Trade Secrets and Other Confidential and Proprietary Information under the Defend Trade Secrets Act of 2016)**

28. GHA reiterates the above and foregoing facts and allegations and incorporates them by reference, herein.

29. GHA is the owner of the trade secrets and other confidential and proprietary information set forth in Paragraphs 26 and 27 above ("GHA Trade Secrets").

30. GHA Trade Secrets constitute a "trade secret" as defined by 18 U.S.C. § 1839(3) because they consist of tangible and intangible financial, business, technical and/or economic information, including plans, compilations, methods, techniques, processes, procedures, and/or programs, which GHA has taken reasonable measures to keep secret and which information derives independent economic value from not being generally known or readily ascertainable by GHA's competitors.

31. GHA's Trade Secrets are related to a product or service used in, or intended for use in, interstate or foreign commerce; specifically, development of certain energy-related projects throughout the United States and abroad.

32. As GHA's Vice President, Tang received and was under an obligation to protect GHA's confidential, proprietary and trade secret information.

33. Yet, upon information and belief, Tang breached his obligations by using and/or disclosing GHA's confidential and proprietary information for his own personal gain in breach of his confidentiality, fiduciary, and contractual relationships with GHA.

34. Tang willfully and maliciously misappropriated GHA's trade secrets and proprietary and confidential information as set forth in Paragraphs 26 and 27 above.

35. Tang's misappropriation was wrongful, and the use and/or disclosure of such information has caused, or will imminently and irreparably, cause GHA to suffer injuries including unfair competition from Tang and/or GHA competitor(s) and damages for value lost to GHA and/or value wrongfully gained by Tang (directly or indirectly).

36. GHA seeks damages in the form of actual damages, unjust enrichment, exemplary damages in an amount not more than two times the amount of the damages awarded, a permanent injunction, attorney's fees, interest and costs as provided for by the DTSA. 18 U.S.C. § 1836(b)(3).

**SECOND CLAIM FOR RELIEF**
**(Breach of Contract – December 2019 Confidentiality Agreement)**

37. GHA reiterates the above and foregoing facts and allegations and incorporates them by reference, herein.

38. The Confidential Information Protection Agreement ("Confidentiality Agreement") fully executed in favor of GHA on December 18, 2019, is a valid and enforceable contract between Tang and GHA.

39. GHA performed or tendered performance under the Confidentiality Agreement.

40. Tang breached the Confidentiality Agreement in the non-exclusive particulars set forth in Paragraph 24, hereinabove.

41. As a direct result of Tang's breaches of contract, GHA has suffered and will continue to suffer damages in an amount that exceeds the minimum jurisdictional limits of this Court, despite its efforts to mitigate the same.

42. GHA is entitled to recover its attorney's fees due to Tang's breach. *See* Tex. Civ. Prac. & Rem. Code § 38.001.

### THIRD CLAIM FOR RELIEF
### (Tortious Interference with Business Relationships – Solicitation of GHA Employees and Customers)

43. GHA reiterates the above and foregoing facts and allegations and incorporates them by reference, herein.

44. By virtue of the employer/employee relationship, GHA was engaged in a business relationship with John Skibinski and Gustavo Solon.

45. Tang acknowledged and was aware that he was prohibited from soliciting any subordinate employees to engage in business activities outside GHA.

46. Tang committed a willful act of interference by inducing GHA employees by actively soliciting them to perform work for his personal business venture(s), which posed a conflict of interest to his duties with GHA. One such incident involved a project of GHA's that Tang had apparently repurposed to market to a company based in Kentucky for his own personal gain. As evinced in Paragraph 27 above, Tang solicited Skibinski for technical assistance with his energy storage project proposals and transmission line plans based on GHAE's prior research.

47. As a result, GHA has suffered, and continued to suffer damages, including, but not limited to, lost profits in an amount to be proven at trial.

48. Because the harm to GHA resulted from Tang's malice, GHA is also entitled to exemplary damages in an amount to be proven at trial.

## APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND PRELIMINARY AND PERMANENT INJUNCTION AGAINST DEFENDANT

49. GHA reiterates the above and foregoing facts and allegations and incorporates them by reference, herein.

50. Under Section 1836(b)(3) of the DTSA, this Court is expressly authorized to grant an injunction to prevent an actual or threatened misappropriation and to take affirmative actions to protect the trade secret. 18 U.S.C. §1836(b)(3)(A).

51. GHA is also entitled to an immediate temporary restraining order from this Court to preserve the *status quo;* that is, the last, actual, peaceable, uncontested status that preceded the controversy, until a trial on the merits can be had.

52. In accordance with the terms of the Confidentiality Agreement; under the DTSA; and under Texas Civil Practices & Remedies Code § 134A.003 and § 65.011, GHA is further entitled to a permanent injunction to prohibit Tang from further using and disclosing GHA's confidential and proprietary information.

53. The general requirements for obtaining both temporary restraining orders and preliminary injunctions under Rule 65 are the same. *See Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987) ("The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted."); *Global Healing Ctr. LP v. Nutritional Brands Inc.*, 2014 WL 585401, at *2 (S.D. Tex. Feb. 14, 2014) (stating that a "party seeking a temporary restraining order or preliminary injunction must establish" the four traditional elements).

54. The Fifth Circuit has explained that "[a] temporary restraining order is a 'stay put,' equitable remedy that has as its essential purpose the preservation of the *status quo* while the merits of the cause are explored through litigation." *Foreman v. Dallas County, Tex.*, 193 F.3d 314, 323 (5th Cir. 1999).

55. The purpose of GHA's application for the TRO and TI is to maintain the *status quo* by preventing the use and/or disclosure by Tang of GHA's confidential, proprietary and trade secret information known to be in his possession to GHA's detriment, as well as to prevent Tang from accessing such information for use and/or disclosure to GHA's detriment in the future.

56. The Court "may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if…specific facts in an affidavit … clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." FED. R. CIV. P. 65(b). *Ex parte* temporary restraining orders are "indispensable" to an action when they provide "the sole method of preserving a state of affairs in which the court can provide effective final relief." *In re Vuitton et Fils S.A.*, 606 F.2d 1, 3 (2d Cir. 1979).

57. A temporary restraining order "should be limited to preserving the *status quo* only as long as necessary to hold a preliminary injunction hearing." *Rio Bravo Produce, Ltd. v. Superior Tomato-Avocado, Ltd.*, 2011 WL 6938450, at *2 (W.D. Tex. Dec. 30, 2011); WRIGHT ET AL., *supra*, § 2948.3 ("The [temporary restraining] order is designed to preserve the *status quo* until there is an opportunity to hold a hearing on the application for a preliminary injunction and may be issued with or without notice to the adverse party."). The Fifth Circuit has held "[a] temporary restraining order is a 'stay put,' equitable remedy that has as its essential purpose the preservation

of the *status quo* while the merits of the cause are explored through litigation." *Foreman*, 193 F.3d at 323.

58. As demonstrated further hereinbelow, GHA has satisfied these requirements as well as all the elements for a temporary restraining order to be entered. Indeed, the TRO is necessary and justified to maintain the *status quo*; **the preservation and protection of GHA's confidential, proprietary and trade secret information from use and disclosure**.

59. GHA has a serious, cogent, and legitimate concern that if Tang is notified of this action before a temporary restraining order is entered, Tang will immediately attempt to access, copy, transfer, or otherwise abscond with additional GHA Confidential Information for use and/or disclosure to the benefit of Tang and to the detriment of GHA.

60. As such, GHA prays that the Court take the necessary action to preserve the *status quo* and grant its application for TRO and injunctive relief.

61. A preliminary injunction "is typically granted during the pendency of a lawsuit to prevent irreparable injury that may result before a final decision on the merits." *Shanks v. City of Dallas, Tex.*, 752 F.2d 1092, 1096 (5th Cir. 1985). In order to obtain injunctive relief, the plaintiff must show: (1) a substantial likelihood of ultimate success on the merits; (2) an injunctive order is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the injunctive order would inflict on the non-movant; and (4) the injunctive order would serve the public interest. *Women's Med. Ctr. v. Bell*, 248 F.3d 411, 418-20 (5th Cir. 2001).

62. GHA has satisfied each of these elements.

63. First, as described more fully in Paragraphs 26 and 27, *supra,* and in the attached attestation, GHA has a probably right to relief against Tang because Tang has and will likely continue to misappropriate GHA's trade secrets and other confidential and proprietary

information, so long as he has access to the same by virtue of the position he holds with GHA, for his own benefit and that of GHA's competitor(s). Furthermore, GHA's business relationships with past and current employees have been the subject of interference.

64. Second, GHA has suffered, and should Tang's conduct continue, GHA will continue to suffer, imminent and irreparable harm to its business and reputation through the disclosure and risk of disclosure of its confidential and proprietary information and continued interference with its existing business relationships. Accordingly, GHA would suffer probable, imminent and irreparable harm if Tang is not enjoined from such conduct.

65. Therefore, GHA is entitled to an immediate order of the Court under FRCP 65, and hereby requests the Court issue a temporary restraining order and, after further hearing, a permanent injunction against Tang permanently restraining him from accessing, using, disclosing, or otherwise misappropriating in any way whatsoever GHA's trade secrets and other confidential and proprietary information and from solicitation of GHA employees and customers.

66. The relief requested under this specific application is narrow.

67. As demonstrated hereinabove, GHA has shown a substantial likelihood of success on the merits on all claims made. Nonetheless, GHA need only satisfy the substantial-likelihood-of- success-on-the-merits element for some of these claims. *See Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 378 (5th Cir. 2008) ("Even assuming arguendo that the [movants] have demonstrated a substantial likelihood of success on the merits on some and/or all of their claims …." (emphasis added)). Further, to satisfy this "element, the plaintiff's evidence need not prove that plaintiff is entitled to summary judgment; plaintiff needs only to present a *prima facie* case, but not demonstrate that he is certain to win." *Allied Home Mortg. Corp. v. Donovan*, 830 F. Supp. 2d 223, 227 (S.D. Tex. 2011).

68. Furthermore, the threatened injury outweighs the threatened harm.

69. This element "involves an evaluation of the severity of the impact on defendant should the temporary injunction be granted and the hardship that would occur to plaintiff if the injunction should be denied." 11A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2948.2 (3d ed. April 2014).

70. Here, GHA is seeking to enjoin, preserve and protect against Tang accessing, using, disclosing, or otherwise misappropriating in any way whatsoever GHA's trade secrets and other confidential and proprietary information and from solicitation of GHA employees and customers; actions that would destroy GHA's business. In contrast, Tang has no right to use or disclose such information under the Confidentiality Agreement or by law. Therefore, this factor weighs in favor of GHA.

71. Finally, granting the preliminary injunction will not disserve the public interest. Tang's conduct was unlawful, and providing a remedy to uphold the law, as well as the Confidentiality Agreement at issue, is in the public interest. *See Roviaro v. United States*, 353 U.S. 53, 59 (1957) (noting "the public interest in effective law enforcement"); *Daily Instruments Corp. v. Heidt*, 998 F. Supp. 2d 553 ¶ 35 (S.D. Tex. 2014) ("[I]t is in the public interest to uphold contracts and to enforce a remedy that is provided for by Texas law."). Thus, if an injunction is issued, it will not adversely affect the public interest.

72. Rule 65(c) states that the "court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." In the Fifth Circuit, the amount can be nothing. *See Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) ("In holding that the amount of security required pursuant to Rule

65(c) is a matter for the discretion of the trial court, we have ruled that the court may elect to require no security at all." (footnote omitted) (internal quotation marks omitted)); *Allied Home Mort. Corp. v. Donovan*, 830 F. Supp.2d 223, 235 ("The Fifth Circuit has held that courts in this Circuit have the discretion to issue injunctions without security.").

73. Although the Court should not require any security to be posted by GHA since GHA is a victim of Tang's unlawful acts, GHA submits the Court should use its considerable discretion in ordering that a minimal security of $500.00 be posted by GHA.

## CONDITIONS PRECEDENT

74. All conditions precedent for GHA to recover have occurred or have been performed, except to the extent that such performance has been prevented, excused, hindered or waived.

## ATTORNEY FEES

75. GHA is entitled to recover reasonable and necessary attorney's fees under its breach of contract claim. *Traco, Inc. v. Arrow Glass Co.*, 814 S.W.2d 186,193 (Tex. App. – San Antonio, 1991, writ denied). GHA is also entitled to recover reasonable and necessary attorney's fees as contemplated by Fed. R. Civ. P. 54, should it prevail on its cause(s) of action.

## CLAIM FOR PRE- AND POST-JUDGMENT INTEREST

76. GHA is entitled to recover pre- and post-judgment interest on all damages that have accrued as of the date of judgment at the highest legal rate until paid.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, GHA respectfully prays that, upon final hearing of this matter, the Court enter a judgment granting the following relief against Tang:

a. Temporary restraining order and preliminary/permanent injunction as prayed for, herein;

b. Actual damages and for any unjust enrichment that is not addressed in computing actual damages;

c. In lieu of actual and unjust enrichment damages, reasonable royalty for Tang's unauthorized disclosure or use of GHA Trade Secrets;

d. Exemplary damages in the amount not more than two times the damages awarded by this Court or a Jury;

e. Reasonable and necessary attorney fees as provided for by law;

f. Costs of suit;

g. Pre- and post-judgment interest; and

h. All other relief, legal or equitable, direct or consequential, to which GHA may show itself to be justly entitled.

Signed on September 12, 2023.

Respectfully submitted,

*/s/Henna Ghafoor* .
HENNA GHAFOOR
FEDERAL BAR NO.: 2258471
TBN: 24079867
hghafoor@mp-lg.com
CHRISTINA KLEPIN
FEDERAL BAR NO.: 3856103
TBN: 24135816
**MOSAIC Paradigm Law Group PC**
10370 Richmond Avenue, Suite 850
Houston, Texas 77042
Telephone: (281) 805-7169
Facsimile: (281) 805-7172

**ATTORNEY FOR PLAINTIFFS**