# DECLARATION OF JOHN SKIBINSKI

BEFORE ME, the undersigned authority, on this day personally appeared, JOHN SKIBINSKI, whose name is subscribed hereto, and said person being by me duly sworn, stated the following under penalty of perjury:

1. "My name is John Skibinski.

2. I am a resident of the City of Houston, State of Texas, United States of America; I am over the age of majority; and I have personal knowledge of the matters declared herein, which are true and correct to the best of my knowledge.

3. At all times pertinent to this Declaration, I was employed by GH America Energy, LLC ("GHAE") as a Senior Project Developer with GHAE's Renewable Energies Department. I am currently the New Energies Development Director with GHAE. By virtue of my duties and responsibilities in connection with my employment with GHAE, I am familiar with GHAE's renewable energy business operations. I have been authorized to sign this Declaration on GHAE's behalf.

4. GHAE's Renewable Energies Department was led by Mingyu Tang ("Tang"). The purpose of the department under his management was to market for sale specific non-residential properties to companies that were interested in developing their own projects on the land. As part of my duties as Senior Project Developer, I assisted potential buyers in understanding the technical aspects of potential energy project developments for which the land may be appropriate.

5. In November 2022, I attended a company meeting led by GHAE's CEO, Lingyun Sun ("Sun"), concerning the poor performance of the Renewable Energies Department. Specifically, Sun expressed concerns that Tang had failed to adequately lead the department and meet the minimum expected goals. I personally had similar discussions with Tang and it was my impression that Tang was not motivated to sell the properties; often created obstacles to selling the properties; and exhibited poor communication with potential customers and GHAE's upper management.

6. During the first quarter of 2023, it was my observation that Tang became even more distant and less involved with the property sales project, forcing my colleague, Gustavo Solon and I, to take over to meet department sales goals. Instead of working on the property sales projects, Tang began focusing on side projects that were not sanctioned by GHAE, but for which he was using GHAE research and resources.

7. For example, around April 2023, Tang began soliciting me for specific technical

EXHIBIT 4                                                                                          GHA00049

assistance on his personal projects and proposals during GHAE work hours, including, but not limited to, energy storage project proposals and transmission line plans based on GHAE's prior research that he wanted to pitch to potential outside investors. I found it curious that Tang used emails from a non-GHAE company in order to discuss these side projects, but he was my supervisor, so I complied with his requests.

8. In addition to soliciting my technical expertise, around June 2023, Tang was attempting to solicit myself and our co-worker, Gustavo Solon, as potential employees for his new energy storage company, for which I understand he was seeking funding.

9. While I found these actions by Tang to be suspicious, I did not report these matters to GHAE upper management, as Tang was my direct supervisor.

10. Recently, I became aware that on June 15, 2023, shortly after proposing to me a renewable energy business venture of his own, Tang shared an internal GHAE Shared Folder named "Case_CFIUS_Request" from his company email to his personal email account, tangmingyu@hotmail.com.

11. I have had the opportunity to review the contents of this folder and was extremely surprised and very concerned to find that Tang had, non-exclusively, transmitted the following GHAE confidential and proprietary information outside the company's Information Technology Domain (gha-group.com):

    a. The entire GHAE company legal and financial structure was appropriated in the "0_Ownership_Structure" subfolder, especially details regarding investors' ownership and amounts. This information could be used by competitors and outside parties to determine GHAE investors' current financial commitment to the company and better position such parties to influence or poach GHAE investors.

    b. The Company's Department of Treasury Committee on Foreign Investment in the United States (CFIUS) transaction information was appropriated in the "130_Barnett and CFIUS_Submission_2020_Month" subfolders. GHAE's work product relating to its CFIUS-compliant transactions are regarded confidential under the auspices of the Departments of Justice, Homeland Security, Defense, State, Energy, Trade, and Science & Technology. GHAE spent a considerable amount of financial resources to develop the work product and internal analysis for these private CFIUS USDA transactions. More specifically, GHAE spent over $250,000 in legal and over $180,000 in internal costs to complete the work product required for its CFIUS foreign land acquisition filings.

    c. The Company Department of Agricultural Land by Foreign Investment Disclosure (AFIDA) for all properties was appropriated in the "USDA_AFIDA" subfolder. GHAE spent an estimated $190,000 in legal and over $110,000 in internal costs to develop its confidential and proprietary work

      product relating to its AFIDA foreign ownership of agricultural land acquisition filings.

   d. The Company's confidential work product for the formation of Blue Valley Ranch, Brother Ranch, Carma Ranch, Lane & Crane Ranch, Morningstar & Rodeo Ranch, and Sister Ranch properties were appropriated in the "132_Brazos Highland Properties" subfolder. In estimation, GHAE spent over $125,000 in legal and surveying costs to develop the proprietary work product for its legal descriptions and parcel maps. Furthermore, in the "137_GH America Energy" subfolder, over $100,000 in professional engineering studies for GHAE's renewable energy land, project and transmission developments underway were appropriated.

   e. In summary, the internal company folder that Tang shared with his personal email contains GHAE's organizational charts; contracts for oil and gas assets and ranch sales; research on renewable energy projects; ownership agreements; asset maps; consulting agreements; and other technical data that is critical to GHAE operations and is highly confidential.

12. Documents concerning business operations contained in the shared folder referenced above are confidential, proprietary and constitute trade secrets of GHAE in the following non-exclusive respects:

   a. <u>Energy Project Development</u>. GHAE's unique ability to understand a potential buyer's capability to develop their own energy projects on the land being marketed for sale by GHAE involves a vast amount of industry know-how and resources relating to regulatory and technical research, which GHAE has developed through diligent work, costly engineering studies, CFIUS analysis, financial studies, and so forth. GHAE's unique library of institutional knowledge and technical expertise relating to land development services for renewables projects sets us apart from our competitors. For these reasons, such information is proprietary and confidential.

   b. <u>Financial Information</u>. GHAE develops financial information utilizing internal market research, customized buyer needs/preferences, historical financial data on current buyers, financial data on our investors, *et cetera*, which information is highly confidential and may constitute trade secrets.

   c. <u>Internal Processes</u>. Documents in this category are utilized to analyze and develop energy-related project proposals, including analyzing CFIUS and other regulatory issues relating to the sale and possible uses of the land, which processes give GHAE a competitive advantage that would be jeopardized if the information were disclosed.

13. GHAE takes efforts to protect its confidential, proprietary and trade secret information in the following non-exclusive respects:

EXHIBIT 4                                                           GHA00051

a. As a condition of employment with GHAE, all managers and all employees agree to abide by the terms of the company's Employee Handbooks, which contain confidentiality provisions providing that employees must not discuss or release the company's business affairs, projects, or clients with anyone outside the company; that private and confidential information is never to be emailed outside the company; and that employees must not act in conflict with company interests.

b. All managers and all employees must continue to treat all nonpublic Company information as confidential even after their employment with GHAE ends, and they are bound by policies and agreements entered into during employment.

c. GHAE has adopted a comprehensive Confidentiality Policy, the terms of which each manager and employee is required to acknowledge and agree to in writing.

d. GHAE expects managers and employees to honor their employment and post-employment obligations with GHAE. Where they do not do so, GHAE is permitted to seek assistance from the Court to prevent injustice.

14. If GHAE's confidential, proprietary and trade secret information were to be disclosed to anyone outside of GHAE, it would significantly impact GHAE's ability to conduct business in our marketplaces in the following non-exclusive respects:

    a. If GHAE's energy project development research and analyses with regard to specific potential buyers were disclosed, competitors will learn GHAE strategies and sales techniques for structuring our property pricing and sales to maximize outcomes, thus negatively impacting GHAE's competitive advantage. Competitors will also know our internal research and analysis on the regulatory difficulties associated with energy development projects and how they may be addressed. GHAE has accumulated information to develop these strategies over several years of diligent cultivation and hard work. Competitors would gain immediate access to GHAE's "know-how" in the industry and compete with us on their similar endeavors.

    b. Financial records for GHAE investors and contracts with GHAE customers show our internal costs, internal financial commitments, and property pricing and sales strategies. If a competitor were to gain access to these documents, they could take unfair advantage of GHAE's financial standing and pricing strategy to significantly undercut our business operations.

    c. Internal processes for GHAE protocols include strategies on buyer acquisition via energy project development proposals based on extensive technical research and analysis. This highly confidential, proprietary and trade secret information is more intricate than either land development or early stage project development competitors. Insight into these intricacies would unfairly propel

competitors to a position that GHAE has spent years and considerable time, energy, resources, and money to develop.

15. All of the foregoing will create problems for GHAE business operations; will severely and negatively impact our ability to compete in the market; and will give our competitors a head start or unfair advantage that they would not have without our information. In addition, potential buyers and cooperative partners will lose confidence in us, resulting in reputational damage that is irreparable.

16. The threat of harm that GHAE faces from the use and/or disclosure of this information is irreparable because it took several years and hundreds of thousands of dollars for GHAE to establish its position in the market. Allowing the information, that we know Tang took from GHAE, based on the shared file referenced above, to be used for Tang's personal benefit or to get into the hands of a competitor would change the current state of affairs in this market and cause our competitors to spend less time or no time developing their own land development services for energies projects.

17. Meanwhile, GHAE's ability to conduct its business adequately and securely is at risk. Access to GHAE's confidential information, as well as the loss of goodwill and reputation amongst its business relationships and the industry constitutes irreparable harm to GHAE. As a result, it will become exponentially more difficult for GHAE to survive.

I declare under criminal penalty of the United States of America that the foregoing is true and correct."

Executed on this 7th day of September 2023.

_____
John Skibinski