UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **GHA CAPSTONE, LLC; GH AMERICA INVESTMENT GROUP, INC.; BRAZOS HIGHLAND HOLDING, LLC; and GH AMERICA ENERGY, LLC,** | § § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | CASE NO. _____ |
| **MINGYU TANG,** | § § § | |
| *Defendant.* | § | |

## ORDER GRANTING TEMPORARY RESTRAINING ORDER

On this day, the Court considered Plaintiffs, GHA CAPSTONE, LLC; GH AMERICA INVESTMENT GROUP, INC.; BRAZOS HIGHLAND HOLDING, LLC; and GH AMERICA ENERGY, LLC (collectively, "GHA")'s, application for temporary restraining order. Having considered the pleadings and evidence on file with the court, this Court is of the opinion that the application should be GRANTED.

This Court finds that GHA has demonstrated through the evidence that immediate and irreparable injury, loss, or damage will result to GHA before the Defendant, MINGYU TANG ("Tang"), can be heard in opposition because Tang is presently the Vice President of GHA, has in his possession certain GHA Trade Secrets, and maintains access to GHA company platforms on which GHA's Trade Secrets are kept and stored. Because giving the Defendant notice of this application for a temporary restraining order poses imminent and irreparable risk of harm to GHA that could result in an inability to provide any relief at all (e.g. Defendant taking retaliatory action to sabotage GHA operations prior to entry of this Order), an *ex parte* temporary restraining order provides the sole method of preserving a state of affairs in which the court can provide effective

final relief. Therefore, this temporary restraining order is issued to preserve GHA's Trade Secrets until Plaintiffs' application for preliminary injunction can be heard.

In order to obtain injunctive relief, GHA has shown: (1) a substantial likelihood of ultimate success on the merits; (2) an injunctive order is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the injunctive order would inflict on the non-movant; and (4) the injunctive order would serve the public interest. Specifically, GHA has demonstrated that Tang has been employed as the Vice President for GHA since December 2019. As a condition of his employment, Tang executed an acknowledgment for the company Employee Handbook and entered into a Confidential Information Protection Agreement ("Confidentiality Agreement") with GHA.

The Employee Handbook requires, in relevant part, the following:

1. that "[t]he Company's business affairs, projects, or clients should not be discussed with anyone outside the Company, or in some cases with other employees not working on your project, except when required in the normal course of business. The Company has adopted a comprehensive Confidentiality Policy, the terms of which each employee is required to acknowledge and agree to in writing. The Company also reserves the right to require all prospective and current employees to sign a Non-Disclosure Agreement";

2. that Employees "use [their] best efforts to protect the secrecy of the proprietary information. For example, proprietary information may not be discussed with outsiders without authorization. [Employees] also may not copy, save or transfer electronic copies of proprietary information away from the company's storage location (e.g., a server network), except for authorized business use. The storage location will be the

    sole repository for the proprietary information. For example, [the employee] may not e-mail proprietary information to [his] personal e-mail account… Former employees must continue to comply with this policy";

3. that Employees "[n]ever include in an email message any information that is private and confidential outside the Company…";

4. that discussion of, or inappropriate release of information which breaches client, co-workers or company confidentiality, as well as, the use of company or client information for personal gain, financial or otherwise, constitutes inappropriate work conduct;

5. that an "employee shall avoid any investment or other interest in another business that would conflict with the proper performance of his or her duties or responsibilities for the Company, or which might interfere with his or her independence of judgment with respect to transactions between the Company and such other business…Personal or outside interests or relationships must not influence employees to the detriment of the Company….If considering or unsure about whether a conflict exists, must report to supervisor/CEO/President for final determination"; and

6. that Employees are prohibited under the Employee Handbook from copying or deleting files belonging to the Company without proper authorization; acting (paid or unpaid) as an employee, officer, director, consultant or representative of any customer or supplier of the Company or of any competitor of the Company; having financial involvement with an employee or representative of a customer or supplier or competitor of the Company with whom the employee directly or indirectly deals in the course of his or her employment with the Company; or soliciting any subordinate employee to

engage in or actually engaging in any outside employment or business activity with such an employee.

The Confidentiality Agreement further defines GHA Confidential Information and provided for injunctive relief to protect the same.

In connection with his work, GHA provided to Tang a Lenovo ThinkPad X13 company laptop.  The evidence shows that data was likely exfiltrated by Tang from said company laptop via a USB storage device and from the company cloud storage platform via a Hotmail account before he fully disabled the device using BitLocker Encryption software. The evidence also shows that large volumes of data were deleted from the company OneDrive storage platform, and were likely exfiltrated to a personal account belonging to Tang prior to deletion. The evidence further shows that Tang has, and will likely continue to use GHA company employees and resources for his own personal gain if he is not enjoined from doing so.

The evidence moreover shows that Tang has, and will likely continue to use, confidential/proprietary information constituting trade secrets of GHA ("GHA Trade Secrets") for his own personal gain. GHA Trade Secrets consist of tangible and intangible financial, business, technical and/or economic information, including plans, compilations, methods, techniques, processes, procedures, and/or programs, which GHA has demonstrated it took reasonable measures to keep secret and which information derives independent economic value from not being generally known or readily ascertainable by GHA's competitors. GHA's Trade Secrets are related to a product or service used in, or intended for use in, interstate or foreign commerce; specifically, development of certain energy-related projects throughout the United States and abroad.

The evidence establishes that, as GHA's Vice President, Tang received and was under an obligation to protect GHA's confidential, proprietary and trade secret information. Because Tang continues to have access to GHA Trade Secrets by virtue of his employment with GHA; because Tang is presently in possession of GHA Trade Secrets regardless of the status of said employment; and because Tang has and will likely continue to use, disclose, communicate, and/or reveal/divulge the same directly for his own benefit or to GHA's competitor(s) for his own benefit or the benefit of someone other than GHA in violation of the DTSA, Employee Handbook, and Confidentiality Agreement, there exists the likelihood of imminent and irreparable harm to GHA.

Based on the evidence, such harm includes, but is not limited to, a negative impact on GHA's competitive advantage in its industry; disclosure of company "know-how" in the industry; and an unfair advantage to GHA competitors based on Trade Secrets that GHA has spent years and considerable time, energy, resources, and money to develop. In addition, potential buyers and cooperative partners of GHA will lose confidence, resulting in reputational damage that is irreparable.

Allowing the information that Tang has in his possession to be used for Tang's personal benefit or to get into the hands of a competitor would change the current state of affairs in the market in which the company operates and cause  competitors to spend less time or no time developing their own land development services for energies projects. Meanwhile, GHA's ability to conduct its business adequately and securely is at risk due to loss of goodwill and reputation amongst its business relationships and the industry, thus constituting irreparable harm to GHA; imminent and irreparable harm to its business and reputation through the disclosure and risk of disclosure of its confidential and proprietary information; and continued interference with its past and existing business relationships.

Should GHA's allegations prove true after a trial of the merits of this cause, the failure to prevent the imminent harm set forth herein would effectively nullify any adequate legal and/or equitable relief that could be afforded at trial. Accordingly, the Court GRANTS GHA's application for temporary restraining order. Wherefore,

**IT IS ORDERED, ADJUDGED AND DECREED** that Defendant Mingyu Tang, and any persons acting in concert or participation with him who receives actual notice of this order, are Ordered and restrained from doing the following:

1. Using, disclosing, or otherwise misappropriating in any way whatsoever GHA's Trade Secrets and other confidential and proprietary information;

2. Soliciting GHA employees and customers;

3. Using, disclosing, or otherwise misappropriating in any way whatsoever GHA's data transferred via a cloud storage account, OneDrive, a USB storage device, any shared file platform, any webmail account, or by any other means whatsoever, including, but not limited to,

    a. The contents of the "Top Tier" folders entitled "Case_CFIUS_Request" and "GHAE";

    b. Data exfiltrated by Defendant by connecting a USB device (Serial No. 5758373244323036485232) to his laptop on or about June 27, 2023;

    c. Data exfiltrated by Defendant via his personal email accounts from December 18, 2019, to present;

    d. The company files Defendant deleted from their folders from April 18 through July 7, 2023, wherever they may now exist;

      e.    The company files and folders accessed from Defendant's mobile device from August 1, 2023, to present.

4. Accessing or attempting to access by any means whatsoever GHA's Trade Secrets and other confidential and proprietary information stored in GHA's business office or on GHA's servers, cloud storage platforms, company emails, company devices, network share platforms, internet platforms or any other location where GHA keeps GHA Trade Secrets.

5. Taking any action that would constitute intimidation, harassment, or duress of GHA in the course of GHA's enforcement of the restrictions set forth in this Order.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Defendant be given notice of and appear at the hearing on GHA's application for temporary injunction before the Honorable Judge Presiding in the _____ District Court of Harris County, Texas, on the _____ day of _____, 2023, ay _____ o'clock ____.m. to show cause, if any, why a preliminary injunction should not be issued as requested.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the GHA execute and file with the Clerk a bond in the amount of $500.00.

      SIGNED on this, the _____ day of September, 2023.

                                                                           _____
                                                                          JUDGE PRESIDING